# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff<br><br>v.<br><br>TP-LINK TECHNOLOGY CO., LTD.,<br><br>Defendant | Case No. 6:20-cv-01016<br>Case No. 6:20-cv-01018<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S CLAIM CONSTRUCTION SUR-REPLY**

**TABLE OF CONTENTS**

I. U.S. PATNET NO. 7,447,767 (Case No. 6:20-cv-01018) ..........................................................1

    A. "automatic descriptor unit" (claim 1) / "automatic descriptor" (claim 14) ....................1

    B. "MIB definition unit" (claim 11) ....................................................................................2

II. U.S. PATENT NO. 8,199,636 (Case No. 6:20-cv-01016) .........................................................3

    A. "change of state of the one or two bits in the route indicator field" (claim1)................3

    B. "internal bypass table" (claim1)......................................................................................3

    C. "one of the nodes that is responsible for detecting the link failure" (claim1) ...............5

I.  **U.S. PATENT NO. 7,447,767 (Case No. 6:20-cv-01018)**

   A.  **"automatic descriptor unit" (claim 1) / "automatic descriptor" (claim 14)**

This term needs no construction and is not a means-plus-function element. Automatic descriptor unit/automatic descriptor, in the context of an NMS, is not a nonce phrase. As described in the '767 Patent, and understood by a POSITA, a descriptor is a conventional data structure object used in the management of an NMS, and the claimed automatic descriptor replaces the known data structure with additional information to accomplish the recited designations and operations. Accordingly, a POSITA fully understands that the automatic descriptor unit/automatic descriptor is an understood and definite structural object within an NMS. Accordingly, the phrase automatic descriptor unit/automatic descriptor is not a means-plus-function element, and Defendant's attempt to rewrite the claim in order to support its frivolous indefinite argument should be rejected.

Further, this claim element is not indefinite. To the extent the Court entertains the notion that this phrase is a means-plus-function element, the phrase is not indefinite because the '767 Patent adequately discloses to a POSITA. First, the specification discloses the automatic descriptor as a data object that performs the recited designations and operations. The specification further discloses a sequence of steps that are performed corresponding to the recited operations performed by the automatic descriptor. '767 Patent at 5:13-6:52. The collection of these steps constitutes an algorithm as understood by a POSITA. As noted by the MPEP:

> An algorithm is defined, for example, as "a finite sequence of steps for solving a logical or mathematical problem or performing a task.'" Microsoft Computer Dictionary, Microsoft Press, 5th edition, 2002.) Applicant may express the algorithm in any understandable terms including as a mathematical formula, in prose, in a flow chart, or "in any other manner that provides sufficient structure." *Finisar,* 523 F.3d at 1340, 86 USPQ2d at 1623; see also *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366, 65 USPQ2d 1934, 1941 (Fed. Cir. 2003); *In re Dossel,* 115 F.3d 942, 946-47, 42 USPQ2d 1881, 1885 (Fed. Cir.1997); *Typhoon*

1

*Touch Inc. v. Dell Inc.,* 659 F.3d 1376, 1385, 100 USPQ2d 1690, 1697 (Fed. Cir. 2011); *In re Aoyama,* 656 F.3d at 1306, 99 USPQ2d at 1945.

MPEP § 2181(II)(B). In its Response, Defendant incorrectly asserts these steps cannot be the steps of an algorithm for the automatic descriptor unit because the specification does not show sub-algorithms for performing each of these steps. This is a nonsensical recursive argument. While there may be sub-algorithms for performing each step of an overall algorithm, there is no requirement to disclose all sub-algorithms (and their sub-sub-algorithms, etc) for each step of an algorithm in order to satisfy the disclosure of the corresponding algorithm, as Defendant asserts. Accordingly, should this term be considered a means-plus-function element, this term is not indefinite because the specification discloses a series of steps to perform the recited designations and operations of the automatic descriptor unit, this term is not indefinite.

Defendant's brand-new construction should also be rejected. Apparently recognizing that this term is not a means-plus-function term, Defendant has now conjured up a horrifically long proposed construction divorced from the explicit language of the claims. The Court should reject Defendant's new rewrite of the claims. Claims 1 and 14 recite the exact requirement of the automatic descriptor, which a POSITA can easily read and understand. While alternative embodiments may include additional features, non-recited features of the automatic descriptor should not be added to the claims because the Applicant did not recite such limitations in the scope of the primary independent claims. Because the claims recite the requirements of the claimed automatic descriptor and the Applicant did not disclaim any scope of the automatic descriptor, the Court should reject Defendant's litigation inspired and tardy construction.

    **B.**    **"MIB definition unit" (claim 1)**

As clearly recited in the claims and in the specification, the MIB definition unit is the *storage* unit in the NMS that *stores* the MIB definitions. '767 at 1:36-38 (describing that the MIB

definitions are *stored* in the NMS), '767 at 4:41-46 (same). This term is not written in a means-plus-function format, and Defendant's attempt to conjure up an indefiniteness argument should be rejected. Further, even if the Court should entertain the notion that this is a means-plus-function element, the specification discloses the NMS as the storage unit that stores the MIB definitions. *Id*.

II.   **U.S. PATENT NO. 8,199,636 (Case No. 6:20-cv-01016)**

    A.   **"change of state of the one or two bits in the route indicator field" (claim 1)**

This term needs no construction because a POSITA understands the phrase as written. In its Reply, Defendant acknowledges that its prior proposed construction was wrong. Reply at 4. Specifically, Defendant acknowledges that a packet can be rewritten by a node during transmission. Defendant now proposes a new unnecessary construction. Claim construction is not an exercise of word substitution, even if the new phrase is similar to the claim language. Because the Applicant used the recited phrase and it is clear to a POSITA, the Court should decline Defendant's attempt to rewrite this phrase.

    B.   **"internal bypass table" (claim 1)**

No construction of this phrase is necessary because a POSITA knows exactly what this phrase refers to. As recited in the claim: when the route indicator field indicates an alternate route should be used as a result of a link failure, the node accesses an "internal bypass table" to retrieve a second route, wherein the second route differs from the first route and is stored in the table prior to the time of a node failure. This is different from the prior art cited during prosecution because the prior art did not have any bypass table. Instead, the prior art had a single routing table. Thus, when there was a link failure, the single routing table was flushed and the table needed to be recomputed. The Defendant's characterization of the file wrapper misrepresents the import and manner in which the prior art was noted to be different. Importantly, the prior art is different because there is no bypass table, whereas in the claimed system there is a bypass table. Of the

various embodiments disclosed, it is true that in one embodiment (but not all embodiments) the bypass table did not rely on MAC addresses to determine the alternate route, but the claims were not distinguished because the claimed bypass table didn't use a MAC address, the claims were distinguished because the claims recited a bypass table, which the prior art lacked. A complete reading of the Office Action Response (rather than cherry picking a quote out of context) demonstrates the true distinguishing feature between the claims and the prior art. Exh. A at 9-13, Office Action Response dated August 21, 2007. Specifically:

> Claim 1 *distinguishes* over the Ambe and Doverspike [the prior art] references because it claims "receiving a packet, wherein the packet comprises a route indicator field" and "responsive to the packet being received after a time of failure along a communication link between two of a plurality along a second route in the system to another node in the plurality of the nodes" – *features not disclosed in either reference*.

*Id*. A at 9 (emphasis added).

> In contrast [to the claims], the Ambe and Doverspike [the prior art] references do not disclose a route indicator field. Instead, they rely on the very type of routing that Applicant is trying to improve.

*Id*. at 11.

> The '636 Patent explicitly disclosed these differences, which was quoted to the Examiner:

> If system 10 were implemented according to the prior art, then upon a failure of one of the links in FIG. 1 a, then a dynamic and automated technique is performed whereby a new spanning tree is defined among its various nodes. Particularly, in such a case, additional control messages are communicated among the various nodes so as to identify the failed link and to establish a new spanning tree. *During this transition time, each node is required to flush information out of its respective forwarding table, and in response to the new control messages each forwarding table is re-built, which is sometimes referred to as a re-learn procedure*. When the forwarding table is complete for each node, the system is said to have re-converged to a new spanning tree. As discussed earlier in the Background Of The Invention section of this document, however, this procedure takes time, and in some implementations may be disadvantageous or even prohibitive. Accordingly, the following discussion demonstrates how system 10,

> according to one preferred embodiment, provides an alternative manner of responding to a link failure and that improves upon drawbacks of the current state of the art.

'636 Patent at 4:53-5:5 (emphasis added). Accordingly, when a link failure occurs, the nodes do not have an internal bypass table that is utilized to route traffic. Instead, the nodes flush their routing tables and have to re-learn a new routing table. The contents of the bypass table, whether use of MAC addresses or some other address, was never the distinguishing feature over the prior art. The prior art lacked any bypass table and was unable to provide the claimed functionality:

> Because the structure disclosed in the Ambe and Doverspike [the prior art] references are not intended to or capable of providing the functionality provided by Claim 1 *because they do not include the link type field in their alleged equivalent of a route indicator field*, Applicant respectfully requests that the Examiner withdraw this rejection.

Exh. A at 13 (emphasis added).

Because the Applicant never disclaimed the use of a MAC address in conjunction with the internal bypass table, the Court should reject Defendant's attempt to interject a negative limitation into the claims.

### C. "one of the nodes that is responsible for detecting the link failure" (claim 1)

The Defendant's attempt to misinterpret the plain meaning of Claim 1, as understood by a POSITA, should be rejected.

As recited, Claim 1 recites a "bridged network." *See* preamble. The '636 describes, as a POSITA would understand, the context of a bridged network and external nodes to the network:

> A bridged network system is described comprising a plurality of nodes. Each node in the plurality of nodes is coupled to communicate with at least one other node in

5

the plurality of nodes. The plurality of nodes comprise a bridge network between external nodes located externally from the plurality of nodes.

'636 Patent at 2:14-19. Figures 1a-1b discloses three different arrangements of the plurality of nodes for exemplary bridge networks. While these figures do not include the external links to external nodes, Figure 1b has been annotated below to disclose such an arrangement for context.



As recited in Claim 1, the plurality of nodes refers to the plurality of nodes "compris[ing] the bridged network between external nodes located externally from the plurality of nodes." As further recited, each node in the plurality of nodes is operable to perform three steps. The third step recites:

> responsive to the packet being received after a time of ***failure along a communication link between two of the plurality of nodes*** and in response to a change of state of the one or two bits in the route indicator field to indicate an alternate route should be used as a result of a link failure, accessing an internal

> bypass table to retrieve a second route and transmitting the packet along the second route in the system to another node in the plurality of nodes, wherein the second route differs from the first route and is stored prior to the time of failure and wherein the change of state of the one or two bits is performed ***by one of the nodes that is responsible for detecting the link failure*** and for receiving and transmitting the packet.

'767 Patent at 17:20-33 (emphasis added). As recited in this third step, a link failure between two nodes has occurred. In the annotated Fig. 1b, an exemplary failed link between Nodes N2 and N7 is depicted with the red X. A POSITA understands the known protocols for detecting link failures between two nodes. '767 Patent at 6:66-67. A POSITA further understands that the two nodes that were linked via the now failed link (here nodes N2 and N7) are the nodes responsible for detecting the link failure.

Accordingly, a POSITA reading claim 1 understands that "***one of the nodes*** that is responsible for detecting the link failure" is one of the "two of the plurality of nodes" referenced earlier in the phrase "failure along a communication link between ***two of the plurality of nodes***." Thus, there is clear antecedent basis for the phrase "one of the nodes" in Claim 1. One of the nodes refers to one of the two nodes between the failed link. These two nodes are a subset of the plurality of nodes comprising the bridged network. Because a POSITA understands that the nodes responsible for detecting a link failure are the two nodes recited earlier in the paragraph, which are from the set of nodes recited as "a plurality of nodes" of the network, this phrase is not indefinite.

Dated: October 18, 2021                           Respectfully submitted,

                                        By:   /s/ Raymond W. Mort, III
                                              Raymond W. Mort, III
                                              Texas State Bar No. 00791308
                                              The Mort Law Firm, PLLC
                                              100 Congress Avenue
                                              Suite 2000
                                              Austin, Texas 78701
                                              Tel/Fax: (512) 677-6825
                                              Email: raymort@austinlaw.com

7

Adam G. Price
Texas State Bar No. 24027750
Christopher V. Goodpastor
Texas State Bar No. 00791991
Gregory S. Donahue
Texas State Bar No. 24012539
DiNovo Price LLP
7000 N. MoPac Expressway
Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627
Email: aprice@dinovoprice.com
cgoodpastor@dinovoprice.com
gdonahue@dinovoprice.com

ATTORNEYS FOR PLAINTIFF WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT